```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA


OFFSHORE MARINE CONTRACTORS, INC.              CIVIL ACTION


VERSUS                                         NO: 10-4151


PALM ENERGY OFFSHORE, LLC AND                  SECTION: R
CHET MORRISON WELL SERVICES, LLC
```

**ORDER AND REASONS**

Before the Court is the motion for summary judgment filed by third-party defendant H.C. Resources against defendant Chet Morrison.[1] Because no genuine issues of material fact exist as to Chet Morrison's claims against H.C. Resources, the Court GRANTS the motion.

I.  **BACKGROUND**

This dispute arises out of outstanding charter fees and damages sustained by a vessel when it became lodged while plugging a well in the Gulf of Mexico. Plaintiff Offshore Marine Contractors Inc. owns a fleet of lift boats used in oil well operations. Plaintiff alleges that on July 15, 2008, one of the boats, the L/B Nicole Eymard, was chartered for use by defendant Chet Morrison Well Services, LLC, a contractor working for Palm

---

[1]  R. Doc. 42.

Energy Offshore, LLC, also a defendant in this suit. The vessel departed on July 18, 2008 for wells in the Chandeleur 37 block.

Although plaintiff asserts in its complaint that Palm owned or was responsible for the Chandeleur 37 wells, they were in fact owned by H.C. Resources.[2] William Gray oversaw the HCR wells during the period in question, since the United States Bankruptcy Court for the Southern District of Texas had appointed him as the manager of HCR to assist in its decommissioning activities.[3] Gray, with his partner Jonathan Garrett, owns Palm Energy Partners, LLC, which owns Palm Energy Offshore, the defendant here.[4] According to Garrett, Gray asked him to assist HCR with the plugging and abandonment of the Chandeleur 37 wells as an unpaid consultant.[5] Garrett relayed to John Dale Williams of Chet Morrison the work needed at the two Chandeleur 37 wells.[6] Plaintiff alleges that from July 18 to July 27, 2008, Chet Morrison employees performed decommissioning activities on the Chandeleur 37 wells, using the L/B Nicole Eymard.[7]

---

[2]   R. Doc. 42-6.

[3]   *Id.*

[4]   R. Doc. 43-4.

[5]   R. Doc. 51-17 at 6.

[6]   *Id.* at 6-7.

[7]   R. Doc. 51-4 at 8.

During this period, Garrett contacted Williams and orally requested that Chet Morrison perform a small cementing job on one of Palm's damaged wells in the West Delta 55 block after Chet Morrison completed its work on the Chandeleur 37 wells.[8] Plaintiff alleges that on July 27, 2008, Chet Morrison employees moved the L/B Nicole Eymard to Palm's West Delta 55 well, arriving on July 28, 2008.[9] At West Delta 55, the vessel attempted to do a bottom survey, but when jacking down to break bottom, its legs became stuck. The vessel remained lodged in this position until August 16, 2008, when plaintiff allegedly formed an agreement with Palm and Chet Morrison to blow the legs off the vessel to free it. Plaintiff issued invoices first to Chet Morrison and then Palm for charter hire at a rate of $19,000 per day from the period beginning July 15, 2008, when the L/B Nicole Eymard left for the Chandeleur 37 block, until September 15, 2008, when repairs on the damaged vessel concluded.[10]

On October 29, 2010, plaintiff filed suit against Palm and Chet Morrison, alleging failure to pay charter fees and breach of contract concerning repairs to the vessel.[11] Plaintiff did not

---

[8] R. Doc. 43-4 at 2. The area in question is occasionally misidentified in the parties' briefs as West Delta 54.

[9] R. Doc. 51-4 at 8-9.

[10] R. Doc. 59-3.

[11] R. Doc. 1.

3

file suit against HCR and erroneously indicated in its complaint that Palm owned and operated the Chandeleur 37 wells.[12] Palm and Chet Morrison filed cross claims based on the Master Service Agreement that governed their relationship.[13] Chet Morrison also filed a third-party complaint against HCR, alleging negligence and breach of contract due to HCR's refusal to indemnify Chet Morrison for its work on the West Delta 55 well.[14] Palm and Chet Morrison filed for summary judgment on plaintiff's claims and the other's cross claims,[15] and HCR sought summary judgment on Chet Morrison's third-party claims.[16] The parties appeared before the Court for oral argument on November 28, 2012. At that time, the Court denied the motions by Palm and Chet Morrison on the ground that questions of material fact remain as to the entity responsible for the charter of the L/B Nicole Eymard and the related costs. The Court, however, granted HCR's summary judgment motion for the reasons described below.[17]

---

[12]  This confusion appears to stem from the appointment of Palm's William Gray as the manager of HCR as part of its bankruptcy proceedings and from Gray's request that Garrett assist with the plugging and abandonment of HCR's wells.

[13]  R. Docs. 26, 27.

[14]  R. Doc. 30.

[15]  R. Docs. 43, 44, 51, 52.

[16]  R. Doc. 42.

[17]  R. Doc. 100.

**II.   STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"  *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or

"showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

## III. DISCUSSION

HCR seeks summary judgment on Chet Morrison's claims of negligence and breach of contract. In its third-party complaint, Chet Morrison asserts that the actions taken by the L/B Nicole Eymard to break bottom on the West Delta 55 well were completed at the instruction of HCR. Chet Morrison also contends that HCR, as a member of the "Palm Group," is required under Palm's Master

Service Agreements with plaintiff and Chet Morrison to indemnify Chet Morrison against liability for the causes of action brought by plaintiff.

The Court finds that Chet Morrison has failed to establish that genuine issues of material fact exist as to HCR's liability for any damage to the L/B Nicole Eymard or HCR's duty to indemnify Chet Morrison. Chet Morrison's complaint erroneously assumes that Jonathan Garrett was HCR's employee, and thus Chet Morrison contends that HCR directed the actions of the L/B Nicole Eymard at the West Delta 55 well and is liable for the resulting damage when the vessel became stuck. But, Garrett is employed by Palm, and it is undisputed that Palm owns the West Delta 55 well. Although Garrett engaged Chet Morrison on HCR's behalf to work on the Chandeleur 37 wells, which HCR owned during the period in question, Garrett testified that he acted as an unpaid consultant and has never been employed by HCR.[18] In his affidavit, William Gray, who along with Garrett owns Palm, stated that HCR has no ownership interest in the West Delta 55 well and that HCR is not an employee, subsidiary, affiliated company or partner of Palm's.[19] Chet Morrison has not put forth any evidence suggesting otherwise and has failed to demonstrate that HCR had any connection to or responsibility for the West Delta well.

---

[18]   R. Doc. 51-17 at 4-6.

[19]   R. Doc. 42-6 at 3.

Accordingly, there are no facts in dispute as to HCR's lack of involvement in the events that transpired at the West Delta 55 well.

In its opposition to HCR's motion for summary judgment, Chet Morrison appears to recognize that HCR had no connection to the West Delta 55 and instead discusses the events that took place at the Chandeleur 37 wells. Chet Morrison contends that the legs of the L/B Nicole Eymard became stuck at the Chandeleur 37 wells and that it took eleven hours to break bottom there. Chet Morrison asserts that the impact of this difficulty on the later events at the West Delta well is unclear but suggests that HCR is at fault. The Court finds that Chet Morrison's attempt to connect the damage sustained by the L/B Nicole Eymard at the West Delta well to the work that the vessel did for HCR at the Chandeleur 37 wells is wholly unsubstantiated. Chet Morrison presents no evidence in support of its vague claim that the L/B Nicole Eymard was damaged at the HCR well and that HCR is therefore liable for the damage to the vessel that occurred at the West Delta well.[20] Moreover, Chet Morrison did not raise any issues involving the Chandeleur wells in its complaint. "A claim which is not raised

---

[20] Chet Morrison asks that summary judgment be denied, since HCR has twice postponed its 30(b)(6) deposition, and thus Chet Morrison has been unable to pose questions to William Gray. Because Chet Morrison seeks evidence on issues that are not properly before the Court, the Court finds that a denial of summary judgment due to the postponed deposition is not warranted.

in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). Thus, any arguments made by Chet Morrison concerning the work done at the Chandeleur wells, including Chet Morrison's claim for charter fees owed, are not properly before the Court.

The Court also finds to be without merit Chet Morrison's contention that it is owed indemnity by HCR for the West Delta 55 incident under Master Service Agreements that Palm executed with plaintiff and Chet Morrison.[21] Chet Morrison has failed to put forth any evidence that HCR is bound by either Agreement. Palm signed the agreements,[22] not HCR, and as previously discussed, Palm and HCR are separate entities. Chet Morrison points to the Agreements' use of the term "Palm Group," which is defined to include, among other entities, Palm's subsidiaries, affiliated companies, and partners, and argues that HCR is a member of the Palm Group.[23] Yet, Chet Morrison has not presented evidence that Palm and HCR are in any way affiliated. Moreover, the term "Palm Group" identifies only the entities that the contractor in each

---

[21] In fact, Chet Morrison does not defend these claims in its opposition to the motion for summary judgment.

[22] R. Docs. 44-4 at 11; 43-5 at 9.

[23] R. Docs. 44-4 at 15; 43-5 at 13.

Agreement must hold harmless and the entities for which the contractors will be held harmless by Palm for any damage.[24] Even if HCR were to fall within the Palm Group, HCR would have no duty to indemnify Chet Morrison. Indeed, the Agreements concern only Palm's duty and the duty of the contractor with which Palm sought to establish a relationship, plaintiff in one agreement and Chet Morrison in the other. Thus, Chet Morrison has put forth no evidence that HCR owes Chet Morrison indemnity for the damage to the L/B Nicole Eymard.

The Court notes that many questions of fact remain as to the relationships among the parties in the suit and the events that transpired at the West Delta well. But, because Chet Morrison has failed to demonstrate that there are any genuine issues of material fact as to HCR's involvement with the West Delta well, on which Chet Morrison based its claims, the Court grants HCR's motion for summary judgment.

---

[24] The language at issue in the Agreement between Palm and Chet Morrison states that "Palm shall release, defend, protect, indemnify, and hold harmless Contractor . . . from and against all suits, actions, claims, liabilities, damages, and demands based upon personal injury or death or property damage or loss . . . suffered by any of the Palm Group." *Id.*

**IV.  CONCLUSION**

For the foregoing reasons, the Court GRANTS HCR's motion for summary judgment and dismisses HCR from the suit.

New Orleans, Louisiana, this 11th day of December, 2012.

_____Sarah Vance_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE