**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**OFFSHORE MARINE CONTRACTORS, INC.**                    **CIVIL ACTION**

**VERSUS**                                               **NO. 10-4151**

**PALM ENERGY OFFSHORE, L.L.C., ET AL.**                 **SECTION "R" (3)**

**ORDER**

On April 3, 2013, the Motion for Sanctions for Improperly Objecting and Instructing Deponents [Doc. #133] came on for oral hearing before the undersigned.  Present were Martin Bohman and Victor Loraso on behalf of Offshore Marine Contractors, Inc. ("OMC"), Robert Reich and Michael Wawrzycki on behalf of Chet Morrison Well Services, L.L.C. ("Chet"), and Holly Thompson on behalf of defendant Palm Energy Offshore, L.L.C. ("Palm").  After the oral hearing, the Court took the motion under advisement.  Having reviewed the motion, the opposition and the case law, the Court rules as follows.

**I.      Background**

The complaint alleges as follows.  OMC operates a fleet of self-elevating lift boats in the Gulf of Mexico.  In July 2008, the L/B Nicole Eymard ("the vessel") was working on charter with Chet who was, in turn, working for Palm.  On July 28, 2008, the vessel arrived at West Delta 54. Pre-loading was commenced, and the vessel jacked without incident.  Later, the vessel began to jack down and attempted to break down.  It was unable to do so.  At least through August 16, 2008, the

vessel remained on location, on charter and effectively immobilized.  The day rate on the vessel was $19,000.000 per day.  Because the charges began to accrue, Chet informed OMC to invoice Palm directly.

Later, representatives of both defendants contacted OMC with a solution.  The parties agreed to cut the legs of the vessel, and OMC alleges that both defendants agreed to pay for the repairs to the legs and that the vessel would remain on charter until it was ready again to put out to sea.

OMC alleges that neither defendant has paid it the monies due for the charter or for the repairs to the vessel.  Each defendant contends that the other owes OMC the monies. OMC thus sued defendants, alleging failure to pay monies owed under contract and open account and breach of contract.

## II.    The Parties' Contentions

### A.    Chet's Motion for Sanctions for Improperly Objecting and Instructing Deponents

Citing excerpts from the depositions, Chet argues that counsel for OMC, Victor Loraso, improperly lodged speaking objections and objections that wrongfully suggested responses to Kim Pitre at least  61 times on a 129-page transcript.  Chet also maintains that counsel for OMC, Martin Bohman, improperly objected to influence testimony during the depositions of Raimy Eymard and Kurt Luwisch.   Chet contends that the objections led to the constructive termination of the depositions.

Chet argues that speaking objections are improper and that lodging an objection is all that is required to preserve it.  As support for its argument, counsel for Chet cites this Court's opinion in which it sanctioned counsel for the movant herein for objections on 170 pages of a 360-page deposition. *See Bordelon Marine, Inc. v. F/V KENNY BOY*, Civ. A. No. 09-3209, 2011 WL 164636

2

(E.D. La. Jan. 19, 2011).

Chet asks the Court to order the completion of any remaining depositions free from objections and the completion of all depositions terminated due to counsel's objections. Chet also asks the Court to sanction counsel for OMC and/or OMC itself all costs and attorneys' fees incurred because of such behavior.

### B.    OMC's Opposition

By relating the procedural background of the lawsuit, OMC first argues that all of Chet's actions here are simply to obtain a continuance of the trial.

Citing the deposition topics, OMC notes that it tendered Pitre to testify on four topics. OMC contends that counsel for Chet repeatedly asked questions not related to the four topics for which Pitre was tendered. OMC maintains that it had to object because failure to object constitutes waiver. OMC notes that Chet began to question – and badger – Pitre about Chet Morrison Contractors, Inc., an entity not even involved in this lawsuit. OMC contends that many of the questions on entities unrelated to the lawsuit related to areas outside Pitre's knowledge. Even after Pitre made clear that the questions sought responses that were outside his knowledge and related to other divisions of OMC, such as sales and not accounting, Chet continued to harass Pitre with similar questions. OMC argues that many of the questions were posed to humiliate and/or intimidate the witness.

OMC notes that Chet sought to depose someone as to the charter between OMC and Chet and/or Palm. OMC tendered Pitre to testify on the topic. Noting that it had already produced approximately 1,000 pages of documents related to the charter, OMC maintains that Pitre was well prepared to answers questions related to the areas of inquiry for which he was tendered. When Chet clarified at the deposition that it sought to depose someone as to the charter between OMC and

Offshore Marine, Inc., an allegedly related entity, OMC alleges that counsel became enraged that Pitre had not reviewed documents related to that charter.

OMC tendered Eymard to testify on the first five topics in the deposition notice.  Item No. 5 requested documents from the summer of 2008.  At the deposition, Chet told Eymard to go and pull documents for the entire year of 2008, and OMC contends that it validly objected on the ground that it was outside the scope of the deposition notice.

At the same deposition, OMC contends that Chet continued to confuse the issues by referring to Chet Morrison Well Services, L.L.C. and Chet Morrison Contractors, Inc. as "Chet Morrison" or "Chet."  OMC objected continually and asked Chet to be clear as to which entity it was referring. Chet now argues that this was OMC's attempt to coach the witness.

At the deposition of Luwisch, OMC argues that Chet consistently mis-characterized Luwisch's testimony.  Luwisch testified over and over that no "company rep" was on board, but Chet asked him over and over which company provided the "company rep" on board.  Chet continually tried to categorize Offshore Construction and Diving as the "company rep" on board, and OMC ultimately objected each time, noting that Luwisch had already testified that no "company rep" was on board.

OMC contends that sanctions are not warranted because its counsel did not impede, delay or frustrate the fair examination of the deponents.  OMC notes that all questions posed to deponents were answered, and, if anyone impeded, delayed or frustrated the depositions, it was counsel for Chet when he terminated two of the depositions.  Citing two cases in which a court has sanctioned counsel for Chet, OMC argues that its behavior is distinguishable.  OMC argues that it did not lodge page-long or paragraph-long objections and only once did it advise a deponent not to answer on the

ground of attorney-client privilege.

### C.    Chet's Reply

Chet first notes that OMC's opposition addresses the actions of Chet's counsel and not its own.  Chet argues that a corporate deposition notice does not limit an attorney's questioning; that is why Chet propounded the individual deposition notices in tandem with that of the corporate deposition.  Chet sought to learn all that the witnesses knew individually and in a corporate capacity.

Citing its own case law, Chet argues that courts have held that all relevant questions may be asked at a corporate deposition.  Chet contends that it did not expand the scope of the depositions after this Court denied OMC's motion to quash them.  Pointing to the December 6, 2012 deposition notice, Chet maintains that it is identical to the ones propounded later.

Distinguishing the case law on which OMC relies, Chet maintains that pointing to its counsel's behavior in another matter is irrelevant here.  Chet contends that its counsel's behavior did not justify that of OMC's counsel.

## III.    Law and Analysis

Pursuant to Federal Rule of Civil Procedure 30(c)(1), "[t]he examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence . . . ."  Fed. R. Civ. P. 30(c)(1).  "During the taking of a deposition the witness has, in general, the same rights and privileges as would a witness testifying in court at a trial."  8A Wright, Miller and Marcus, Federal Practice and Procedure § 2113 (2d ed. 1994).

> As officers of the court, counsel are expected to conduct themselves in a professional manner during a deposition. A deposition is intended to permit discovery of information in the possession of the deponent or perpetuate the testimony of the deponent. In either case, it is to be conducted in a manner that simulates the dignified and serious atmosphere of the courtroom. Thus, the witness is placed under oath and a court reporter is present. Conduct that is not permissible in the courtroom during

> the questioning of a witness is ordinarily not permissible at a deposition. . . A deposition is not to be used as a device to intimidate a witness or opposing counsel so as to make that person fear the trial as an experience that will be equally unpleasant, thereby motivating him to either dismiss or settle the complaint.

*Ethicon Endo-Surgery v. U.S. Surgical Corp.*, 160 F.R.D. 98, 99 (S.D. Ohio 1995).  Pursuant to Rule 30(c)(2),

> [a]n objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Fed. R. Civ. P. 30(c)(2).  "Depositions frequently have been unduly prolonged, if not unfairly frustrated, by lengthy objections and colloquy, often suggesting how the deponent should respond."  Fed. R. Civ. P. 30(c) Advisory Committee's Note, 1993 amendments.  Appropriate objections include the form of the question or the responsiveness of an answer.  *Id.*  "Directions to a deponent not to answer a question can be even more disrupting than objections."  *Id.*  Under Rule 30(d)(2),

> [t]he court may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent.

Fed. R. Civ. P. 30(d)(2).

> The rule also explicitly authorizes the court to impose the cost resulting from obstructive tactics that unreasonably prolong a deposition on the person engaged in such obstruction. This sanction may be imposed on a non-party witness as well as a party or attorney, but is otherwise congruent with Rule 26(g).

Fed. R. Civ. P. 30(d) Advisory Committee's Note, 1993 amendments.

The Court finds that the behavior of counsel for OMC does not warrant sanctions here.  Indeed, most of the objections by OMC's counsel are simple form objections with no unwarranted, lengthy speaking objections.  And while the Court recognizes that, in a few instances, counsel for OMC spoke in tandem with objections, the Court finds that such objections were prompted by the

vague questions of counsel for Chet.  For example, in one lengthy speaking objection, counsel for OMC was simply trying to determine whether counsel for Chet was referring to Chet Morrison Well Services, L.L.C. or Chet Morrison Contractors, Inc. when he posed questions in which he termed the corporate entity as "Chet Morrison" or "Chet."  It is not unreasonable for counsel for OMC to insist on defining with particularity the corporate entity to which counsel for Chet was referring when one of the issues in the lawsuit is which corporate entity entered the charter with and/or owes monies to OMC.

The Court finds OMC's counsel's behavior here to be distinguishable from that sanctioned in *Bordelon Marine, Inc. v. F/V KENNY BOY*, Civ. A. No. 09-3209, 2011 WL 164636 (E.D. La. Jan. 19, 2011).  There, the Court noted that many of the disputes continued for pages upon pages of the deposition transcripts.  *See id.* at *6.  That is not the case here.  Neither is it the case here that counsel improperly instructed the witness not to answer.  In *Bordelon*, the Court found that on many occasions, counsel instructed the witness not to answer – instead of simply objecting and allowing the deposition to proceed – without a valid legal basis under Federal Rule of Civil Procedure 30(c)(2).  *See id.*  Here, the Court has found only one instance in which counsel for OMC instructed the witness not to answer, and that on the valid ground of the attorney-client privilege.  Fed. R. Civ. P. 30(c)(2).  In *Bordelon*, this Court also found that counsel for movant herein stormed out of the room and unilaterally placed on hold the questioning of the deponents.  2011 WL 164636, *6.  That is not the case here, and the Court does not find any of the objections and/or behavior of counsel for OMC as egregious as that outlined in *Bordelon*.

IV.   **Conclusion**

For the foregoing reasons,

7

   **IT IS ORDERED** that the Motion for Sanctions for Improperly Objecting and Instructing

Deponents [Doc. #133] is DENIED.

   New Orleans, Louisiana, this  8th  day of April, 2013.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**