```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


OFFSHORE MARINE CONTRACTORS,                CIVIL ACTION
INC.


VERSUS                                      NO: 10-4151


PALM ENERGY OFFSHORE, LLC AND               SECTION: R(3)
CHET MORRISON WELL SERVICES,
LLC
```

### ORDER AND REASONS

Chet Morrison Well Services, L.L.C. (CMWS), Offshore Marine Contractors, Inc. (OMC), and Palm Energy Offshore, L.L.C. (PEO) have all filed motions to alter or amend the judgment.[1] The Court GRANTS these motions insofar as they seek clarification of the amount of prejudgment interest awarded to OMC and CMWS. The Court also GRANTS PEO's motion insofar as it seeks relief from liability for charter fees incurred while the L/B Nicole Eymard was stuck on location at the West Delta 55 block. In all other respects, the Court DENIES the motions.

I.   BACKGROUND

The Court discussed the facts giving rise to this maritime contract dispute at length in its October 7, 2013 Order and Reasons,[2] and will not repeat them here. In that Order, the Court

---

    [1]   R. Docs. 245, 247, 249.

    [2]   R. Doc. 243.

held as follows:

> CMWS owes **$249,750.00** to OMC in outstanding charter fees for the L/B Nicole Eymard for the period between July 15 and July 27, 2008. Because the invoices submitted to CMWS provide that 1.5% interest is added after 30 days, CMWS must add one and one half percent prejudgment interest to each invoice to run from the date 30 days after the invoice was issued. HCR in turn owes **$249,750.00**, also with prejudgment interest, to CMWS. . . .
>     CMWS owes **$432,125.00** to OMC in outstanding charter fees for the L/B Nicole Eymard for the period between July [28] and August 18, [2008],[3] with one and one half percent prejudgment interest on each invoice to run from the date 30 days after the invoice was issued. PEO in turn owes **$432,125.00**, also with prejudgment interest, to CMWS. . . .
>     CMWS owes PEO the reasonable attorneys' fees and costs that PEO incurred in defending against OMC's claims regarding the West Delta 55 job, repair costs, and downtime charter, as well as the fees it incurred in bringing the crossclaim against CMWS for indemnity.[4]

CMWS, OMC, and PEO have each moved the Court to alter or amend the judgment or (in CMWS's case) for a new trial, pursuant to Federal Rule of Civil Procedure 59. These motions raise four issues. First, the parties dispute whether the award of prejudgment interest was appropriate and, if so, what amount of prejudgment interest is warranted. Second, CMWS argues that PEO should have to pay it a 15% markup on the West Delta 55 job. Third, CMWS argues that PEO's failure to pay OMC charter fees for the West Delta 55 job constituted a breach of contract that absolves CMWS of its obligation to pay PEO's attorneys' fees and

---

    [3]    The Court's Order mistakenly listed these dates as July 27 and August 18, 2012, respectively.

    [4]    R. Doc. 243 at 34-35 (citations omitted).

2

costs. Finally, PEO argues that the Court should not have adjudged PEO liable for charter fees for the L/B Nicole Eymard's "on-site downtime" -- that is, the period from August 1, 2008 to August 18, 2008, when the vessel was stuck in the West Delta 55 block but was not performing work.

## II.  LEGAL STANDARD

A motion under Rule 59 "calls into question the correctness of a judgment." *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). Because of the interest in finality, Rule 59 motions may only be granted if the moving party shows there was a manifest error of law or fact or presents newly discovered evidence that could not have been discovered previously. *Id.* at 478-79; *Pluet v. Frasier*, 355 F.3d 381, 385 n.2 (5th Cir. 2004). Moreover, Rule 59 motions should not be used to relitigate old matters, raise new arguments, or submit evidence that could have been presented earlier in the proceedings. *See Templet*, 367 F.3d at 479; *Rosenblatt v. United Way of Greater Hous.*, 607 F.3d 413, 419 (5th Cir. 2010) ("[A] motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" (alteration in original)); *Pluet*, 355 F.3d at

385 n.2. The grant of such a motion is an "extraordinary remedy that should be used sparingly." *Indep. Coca-Cola Emps.' Union of Lake Charles, No. 1060 v. Coca-Cola Bottling Co. United, Inc.*, 114 F. App'x 137, 143 (5th Cir. 2004) (citing *Templet*, 367 F.3d at 479). The Court must balance two important judicial imperatives in deciding whether to reopen a case in response to a motion for reconsideration: "1) the need to bring litigation to an end; and 2) the need to render just decisions on the basis of all the facts." *Templet*, 367 F.3d at 479.

**III. DISCUSSION**

**A.   Prejudgment Interest**

The parties dispute both the propriety and amount of the prejudgment interest award in this case. CMWS argues that prejudgment interest should not have been awarded at all, and contends that if it is awarded, it should be a one-time 1.5% charge. OMC asserts that the award of prejudgment interest was proper, and seeks clarification of the rate of interest. According to OMC, an award of 1.5% interest per month is appropriate. PEO argues that it should not have to pay CMWS prejudgment interest. PEO further contends that, if it is held responsible for prejudgment interest, the proper rate is 1% per month.

   1.   *The Award of Prejudgment Interest Was Proper*

The Court declines to reconsider its decision to award prejudgment interest in this matter. It is well-settled that "[u]nder maritime law, the awarding of prejudgment interest is the rule rather than the exception, and, in practice, is well-nigh automatic." *Reeled Tubing, Inc. v. M/V Chad G*, 794 F.2d 1026, 1028 (5th Cir. 1986); *accord Sea Link Cargo Servs. Inc. v. Mar. Centre Inc.*, 380 F. App'x 460, 464 (5th Cir. 2010). "A trial court has the discretion to deny prejudgment interest only where peculiar circumstances would make such an award inequitable." *Reeled Tubing*, 794 F.2d at 1028; *see also Sea Link*, 380 F. App'x at 464. The *Reeled Tubing* court identified four such "peculiar circumstances": "where plaintiff improperly delayed resolution of an action, where a genuine dispute over a good faith claim exists in a mutual fault setting, where some equitable doctrine counsels against the award, or where the damages award was substantially less than the amount claimed by plaintiff." 794 F.2d at 1028. The Supreme Court has since held that "neither a good-faith dispute over liability nor the existence of mutual fault justifies the denial of prejudgment interest in an admiralty collision case," thereby abrogating the second part of *Reeled Tubing*'s "peculiar circumstances" test. *City Of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 199 (1995).

None of the remaining "peculiar circumstances" are present here. First, there is no evidence in the record that OMC

"improperly" delayed in bringing this action. CMWS contends that "any delayed resolution of this matter was caused by OMC pursuing PEO, and PEO not paying,"[5] but in fact the evidence indicates that OMC pursued PEO only after CMWS told OMC to do so. CMWS, which was ultimately adjudged liable to OMC for the charter hire for both jobs at issue, cannot now contend that OMC improperly delayed resolution of this case when OMC simply followed CMWS's billing instructions. Second, CMWS has identified no equitable doctrine that would militate against an award of prejudgment interest. Finally, while OMC was not successful on all of its claims in this litigation, it did recover the full amount of charter fees it claimed it was owed for both the Chandeleur 37 and West Delta 55 jobs. Accordingly, the Court finds that there is no reason to depart from the usual practice of awarding prejudgment interest. *Cf. Jurgens Maschinebau GmbH & Co. v. Blue Anchor Line*, No. 02-2213, 2005 WL 1309135, at *2 (E.D. La. May 16, 2005) (awarding prejudgment interest in maritime case after finding that "the record is devoid of any evidence that the Plaintiffs improperly delayed in notifying [defendant] of its claim, in filing suit, or in prosecuting its suit; or that any other peculiar circumstances exist such that an award of prejudgment interest would be inequitable").

PEO argues that it should not be liable to CMWS for

---

[5] R. Doc. 245-2 at 6.

prejudgment interest because (1) it paid the only invoice issued by CMWS and so should not be "penalized" by a prejudgment interest award; and (2) under the terms of a Master Service Agreement between PEO and CMWS (the "PEO-CMWS MSA"), PEO did not have an obligation to pay CMWS until CMWS paid OMC.

PEO's first argument, that the award of prejudgment interest would amount to an unfair "penalty," fails. Prejudgment interest "is not a penalty, but compensation for the use of funds wrongfully withheld." *Platoro Ltd., Inc. v. Unidentified Remains of a Vessel*, 695 F.2d 893, 906 (5th Cir. 1983); *see also City of Milwaukee*, 515 U.S. at 196 ("By compensating 'for the loss of use of money due as damages from the time the claim accrues until judgment is entered,' an award of prejudgment interest helps achieve the goal of restoring a party to the condition it enjoyed before the injury occurred." (citations omitted)); *Sea Link*, 380 F. App'x at 464. Since the Nicole Eymard was chartered by CMWS to perform work on PEO's wells, PEO has had use of funds that rightfully belonged to CMWS (and ultimately to OMC). Thus, it is only fair that PEO compensate CMWS and OMC for the use of those funds. *See City of Milwaukee*, 515 U.S. at 195-96 (noting that "[f]ull compensation has long been recognized as a basic principle of admiralty law," and that prejudgment interest "ensure[s] that an injured party is fully compensated for its loss").

PEO's second argument is based on a clause of the PEO-CMWS MSA that provides as follows:

> [F]inal payment or any partial payment shall not become due until . . . [CMWS] shall have furnished proof acceptable to Palm that all claims against Contractor (by its laborers, materialmen, suppliers and subcontractors who provided labor, goods, equipment, services, supplies, machinery, and/or facilities of any kind in connection with Contractor's obligations under this Agreement) have been fully paid and satisfied . . . .[6]

PEO contends that, because it had no obligation to pay CMWS under this agreement until after CMWS paid its contractors, it should not be held liable for prejudgment interest.

The Court finds this argument unpersuasive. Whether PEO complied with the terms of its contract with CMWS is irrelevant to the Court's determination of whether an award of prejudgment interest is proper. The Court has held that, after the West Delta 55 job was completed, CMWS became liable to OMC for charter fees, and PEO in turn became liable to CMWS for those fees, since the work was ultimately performed for PEO's benefit. The award of prejudgment interest is intended to compensate CMWS, and ultimately OMC, for the use of those charter fees during the past five years. *Cf. Cashman Equip. Corp. v. Smith Mar. Towing Corp.*, No. 12-945, 2013 WL 158739, at *4-7 (E.D. La. Apr. 12, 2013) (awarding prejudgment interest on charter fees due pursuant to a "pay when paid" agreement, even though the party owing charter

---

[6]   R. Doc. 249-2 at 4.

fees had never been paid by its client).

In short, PEO has not shown that any of the "exceptional circumstances" identified by the *Reeled Tubing* court exist, and hence the Court will follow the Fifth Circuit's typical rule and award prejudgment interest.

### 2.   CMWS and PEO Are Liable For Prejudgment Interest at the Rate of 1.5% Per Month

With respect to the rate of prejudgment interest, the Court now clarifies that CMWS is liable to OMC for prejudgment interest at the rate of 1.5% per month, and PEO is in turn liable to CMWS at that same rate.

"Setting the rate of interest on a judgment is within the trial court's broad discretion." *Reeled Tubing*, 794 F.2d at 1029. "The Fifth Circuit has upheld awards at the Louisiana legal rate, at the federal legal rate, as well as at, among other rates, higher rates roughly equal to the plaintiff's actual cost of borrowing." *Pillsbury Co. v. Midland Enters., Inc.*, 715 F. Supp. 738, 770-71 (E.D. La. 1989) (collecting cases). "[I]n this Circuit prejudgment interest is ordinarily awarded from the date of loss," because this "ensure[s] that the injured plaintiff is compensated for the use of funds to which the plaintiff was entitled, but which the defendant had use of prior to judgment." *Reeled Tubing*, 794 F.2d at 1028; *Sea Link*, 380 F. App'x at 464 (stating that "the date of injury, rather than the date of

judicial demand," is the "proper date from which prejudgment interest should run" (citing *In re Signal Int'l, LLC*, 579 F.3d 478, 500-01 (5th Cir. 2009))); *see also City of Milwaukee*, 515 U.S. at 196 ("By compensating 'for the loss of use of money due as damages from the time the claim accrues until judgment is entered,' an award of prejudgment interest helps achieve the goal of restoring a party to the condition it enjoyed before the injury occurred." (citations omitted)).

In its earlier Order, the Court based the rate of prejudgment interest on OMC Exhibit 4, which is an invoice from OMC to CMWS providing that 1.5% interest per month will be added after 30 days.[7] CMWS contends that "there is no evidence or testimony whatsoever that CMWS knew or agreed to the terms on OMC's invoices,"[8] but the Court is unpersuaded. CMWS chartered the Nicole Eymard and then received invoices clearly stating that 1.5% interest would be added on outstanding charter fees after thirty days. In any event, the Court finds that 1.5% interest per month is a reasonable interest rate for vessel charter hire during the period in which the Nicole Eymard was hired. *See Cashman Equip. Corp.*, 2013 WL 158739, at *7 (finding 1.5% per

---

[7] R. Doc. 243 at 34.

[8] R. Doc. 245-2 at 5.

month to be a reasonable interest rate for vessel charter hire for the period between 2008 and 2010).

PEO argues that, if it is held liable for prejudgment interest to CMWS, the applicable rate of interest should be 1% per month, because of the following clause in the PEO-CMWS MSA:

> All [CMWS] invoices shall identify the items related to the charges and shall provide appropriate documentation supporting the charges (e.g. receipts, time sheets, etc.). The invoices shall also indicate whether the prices are the published prices, negotiated prices, or as bid. *Within thirty (30) days after receipt by Palm of [CMWS]'s invoice, Palm shall pay to [CMWS] all undisputed sums. Palm agrees to pay interest at the rate of 1% per month on all undisputed sums and owed to [CMWS] that are not paid timely.*[9]

The Court finds that this clause of the MSA is not applicable to the situation at hand. The 1% per month interest rate mentioned applies to undisputed sums owed by PEO to CMWS that are memorialized in an outstanding invoice. The charter fees that PEO owes to CMWS are not recorded in any outstanding invoices and were certainly not "undisputed." Accordingly, the Court finds that a reasonable rate of interest for PEO's obligation to CMWS is 1.5% per month. *Cf. Cashman Equip. Corp.*, 2013 WL 1587539, at *7.

In sum, the Court reaffirms its judgment that the proper rate of prejudgment interest in this matter is 1.5% per month on

---

[9] R. Doc. 249-2 at 3 (emphasis added).

each invoice, to run from the date thirty days after the invoice was issued.

**B.    Markup for the West Delta 55 Job**

CMWS argues that it is entitled to collect a 15% markup on the charter hire for the West Delta 55 job. It cites Jonathan Garrett's deposition testimony, in which Garrett stated that "a mark-up is standard in the industry when a contractor passes along a subcontractor's costs."[10] CMWS is correct that there is evidence in the record tending to suggest that usual industry practice is for a contractor to collect a mark-up on costs it passes along to a customer. But, as the Court held in its earlier Order,[11] there is virtually no evidence that any representative of PEO actually agreed to pay a mark-up in this particular case. Accordingly, the Court declines to reconsider this portion of the judgment. *See Mitchell v. Sikorsky Aircraft*, No. 12-10523, 2013 WL 3239439, at *4 (5th Cir. Mar. 5, 2013) (noting that a Rule 59 motion is not the proper vehicle to revisit matters already argued and decided (citing *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008))).

---

[10]    R. Doc. 245-2 at 8.

[11]    *See* R. Doc. 243 at 21 ("There is virtually no evidence . . . that any representative of PEO agreed to pay CMWS a 15% markup on the liftboat.").

## C. CMWS's Obligation to Pay PEO's Attorneys' Fees

CMWS argues that it is not responsible for PEO's attorneys' fees and costs under the PEO-CMWS MSA because PEO breached that MSA in refusing to pay OMC for the West Delta 55 job. This is incorrect. Contrary to CMWS's contention, the Court did *not* find that PEO agreed to pay OMC directly for the West Delta 55 job. Instead, the Court held that CMWS was liable to OMC for those charter fees.[12] Since PEO had no obligation to pay OMC charter fees for the West Delta 55 job, its failure to do so cannot constitute a breach of contract that would relieve CMWS from its obligation under the PEO-CMWS MSA to pay PEO's reasonable attorneys' fees and costs. Accordingly, the Court will not alter or amend this portion of the judgment.

## D. PEO's Liability for "On-Site Downtime"

PEO argues that it should not have to pay OMC for charter fees incurred while the Nicole Eymard was stuck on the West Delta 55 block because the MSA between CMWS and PEO operated to release PEO from that liability. The relevant provision of the MSA provides as follows:

> Contractor [i.e. CMWS] shall release . . . Palm, its employees, subsidiaries, affiliated companies, joint

---

[12] R. Doc. 243 at 21-22.

13

> venturers, partners, contractors and subcontractors . . ., agents, invitees, and all of their respective vessels, officers, directors, and employees . . . from and against all suits, actions, claims, liabilities, damages, and demands based upon personal injury or death or property damage or loss . . ., whenever occurring, suffered by any of the Contractor Group . . . where the claim or loss arises out of, is connected with, incident to, or is directly or indirectly resulting from or relating to the performance of this Agreement . . . .[13]

The Court held in its earlier order that OMC's claims against PEO for charter fees incurred while the Nicole Eymard was stuck on location at the West Delta 55 block are "based on . . . property damage or loss . . . suffered by any of the Contractor Group" that "relat[ed] to the performance of th[e] Agreement."[14] CMWS's claims against PEO for those charter fees are substantively identical to OMC's claims, and hence they fall within the terms of the release in the PEO-CMWS MSA. Accordingly, the Court finds that the above-quoted provision releases PEO from its liability to CMWS for the charter fees incurred during "on-site downtime." *See Becker v. Tidewater, Inc.*, 586 F.3d 358, 369 (5th Cir. 2009) (noting that a release and indemnity provision in a maritime contract "should be read as a whole and its words given their plain meaning"); *Ingram Corp. v. J. Ray McDermott &*

---

[13] R. Doc. 249-2 at 15.

[14] R. Doc. 243 at 30 (citing *Energy XXI, GoM, LLC v. New Tech Eng'g, LP*, 787 F. Supp. 2d 590, 605-07 (S.D. Tex. 2011)).

*Co., Inc.*, 698 F.2d 1295, 1311-12 (5th Cir. 1983) ("'Unmistakably clear' language which is contained in release negotiated by commercial parties with substantially equal bargaining power should be construed to mean what it says."). The Court holds that PEO is not liable to CMWS for charter fees during the period in which the Nicole Eymard was stuck on the West Delta 55 block (August 1, 2008 to August 18, 2008).

**IV. CONCLUSION**

In summary, the Court alters and clarifies its judgment in this matter in the following two respects. First, PEO is liable to CMWS only for the charter fees incurred from July 28 to July 31, 2008 on the West Delta 55 job. The PEO-CMWS MSA operates to release PEO from liability from the remaining charter fees for the West Delta 55 job. Second, CMWS owes OMC prejudgment interest at the rate of 1.5% per month, to run from the date 30 days after the invoice was issued. PEO owes CMWS prejudgment interest at that same rate on the charter fees incurred from July 28 to July 31.

Thus, it is the judgment of this Court that CMWS owes **$249,750.00** to OMC in outstanding charter fees for the L/B Nicole Eymard for the period between July 15 and July 27, 2008. CMWS must add prejudgment interest at the rate of 1.5% per month to

each invoice, to run from the date 30 days after the invoice was issued. HCR in turn owes **$249,750.00**, also with prejudgment interest calculated at the same rate, to CMWS.

CMWS owes **$77,800.00** to OMC in outstanding charter fees for the L/B Nicole Eymard for the period between July 28 and July 31, 2008. Again, CMWS must add prejudgment interest at the rate of 1.5% per month to each invoice, to run from the date 30 days after the invoice was issued. PEO in turn owes **$77,800.00**, also with prejudgment interest calculated at the same rate, to CMWS.

CMWS owes **$354,325.00** to OMC in outstanding charter fees for the vessel for the period between August 1 and August 18, 2008, again with prejudgment interest at a rate of 1.5% per month.

CMWS owes PEO the reasonable attorneys' fees and costs that PEO incurred in defending against OMC's claims regarding the West Delta 55 job, repair costs, and downtime charter, as well as the fees PEO incurred in bringing the crossclaim against CMWS for indemnity. The Court refers the issue of the amount of attorneys' fees that PEO can recover to Magistrate Judge Daniel Knowles for a report and recommendation.

New Orleans, Louisiana, this 30th day of December, 2013.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE