UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| OFFSHORE MARINE CONTRACTORS, INC. | CIVIL ACTION |
| VERSUS | NO: 10-4151 |
| PALM ENERGY OFFSHORE, LLC AND CHET MORRISON WELL SERVICES, LLC | SECTION: R(3) |

### ORDER AND REASONS

Before the Court is the Motion of Palm Energy Offshore, LLC (PEO) to Set Attorney's Fees and Costs,[1] the Magistrate Judge's Report and Recommendation (R&R),[2] the objections of Chet Morrison Well Services, LLC (CMWS) to the R&R,[3] and PEO's response to CMWS's objections.[4] The Magistrate Judge recommends granting PEO's motion in part and awarding PEO attorneys' fees in the amount of $220,202.57 and costs in the amount of $7,635.56.[5] The Magistrate Judge's recommended attorneys' fees award of $220,202.57 reflects a reduction from the fees award of $257,789.73 originally requested by PEO.[6] This reduction results

---

[1] R. Doc. 262.

[2] R. Doc. 276.

[3] R. Doc. 277.

[4] R. Doc. 279.

[5] R. Doc. 276 at 9.

[6] R. Doc. 262-1 at 1.

from the Magistrate Judge's recommended reduction in the hourly rates charged by the main attorneys on the case.

I.  **Background**

   A.  **The Court's Fees Award**

This consolidated action involves two cases. The Court begins by briefly summarizing the claims involved in each case and identifying those claims for which CMWS owes PEO attorneys' fees and costs.

First, Offshore Marine Contractors, Inc. (OMC) brought suit against PEO and CMWS for charter hire and alleged breach of an oral agreement for repair costs and lost charter hire arising out of damage to the leg of a vessel owned by OMC (OMC suit).[7] In the course of the OMC suit, (1) CMWS filed a counterclaim against OMC;[8] (2) PEO and CMWS brought cross-claims against one another for indemnity for the charter fees sought by OMC;[9] and (3) CMWS brought a third-party claim against H.C. Resources, LLC (HRC).[10] HRC was represented by the same counsel as PEO. The Court

---

[7] *Offshore Marine Contractors, Inc. v. Palm Energy Offshore, LLC and Chet Morrison Well Services, LLC*, No.2:12-cv-04151.

[8] R. Doc. 10.

[9] R. Docs. 26 & 27.

[10] R. Doc. 30.

dismissed CMWS's third-party claim against HCR on December 11, 2012.[11]

Second, CMWS filed a separate suit against PEO and HCR on December 12, 2012 for charter fees and breach of contract in connection with same incident (CMWS suit).[12] The Court consolidated the CMWS suit with the OMC suit on February 6, 2013.[13]

Following a bench trial, the Court found CMWS liable for PEO's attorney fees and costs incurred in defending against OMC's original claims in the OMC suit on the basis of an indemnity provision in a Master Service Agreement between PEO and CMWS.[14] On the same basis, the Court found CMWS liable for PEO's attorney fees and costs incurred in pursuing its cross-claim for indemnity against CMWS.[15] PEO is not entitled to attorneys' fees in connection with the CMWS suit. The Court referred the matter of attorneys' fees and costs to Magistrate Judge Knowles on October 7, 2013.[16]

---

[11] R. Doc. 113.

[12] *Chet Morrison, LLC v. Palm Energy Offshore, LLC and H.C. Resources, LLC*, No. 1:12-cv-02973.

[13] R. Doc. 140.

[14] R. Doc. 243 at 29-34.

[15] *Id.*

[16] R. Doc. 243 at 35.

**B. PEO's Requested Fees**

PEO seeks $257,789.73 in attorney fees and $7,635.56 in costs, for a total of $265,425.29.[17] To support its fees request, PEO filed into the record a spreadsheet with attorney names, hours, and hourly rates broken down by month, and submitted unredacted copies of its invoices to the Magistrate Judge and the Court for *in camera* review.[18] PEO asserts that its invoices contain attorney-client communications and legal strategy, and that the invoices are particularly sensitive because CMWS is in the process of appealing the Court's decision in the consolidated action to the Fifth Circuit Court of Appeals.[19] To arrive at its requested fees figure, PEO began by multiplying the number of hours worked by each attorney by his or her hourly rate.[20] PEO then adjusted its hours downward to account for work completed for parties (*i.e.* HRC) or in connection with claims (*i.e.* any work on the CMWS suit) not covered by the Court's fees award order.

*1. Adjustments to Hours Billed Before December 14, 2012*

Counsel for PEO also represented HCR. PEO asserts that it eliminated all time entries for work conducted solely on HCR's

---

[17] R. Doc. 262.

[18] *Id.* at 4.

[19] R. Doc. 272. at 3.

[20] R. Doc. 262-1 at 2.

4

behalf, as well as time spent monitoring sanctions disputes between OMC and CMWS and time spent on PEO's motion to dismiss OMC's complaint on procedural grounds.[21] PEO asserts that this work comprised 11 percent of its total billing.[22] After these adjustments, the fees for this period come to **$114,502.18**.

*2. Adjustments to Hours Billed After December 14, 2012*

CMWS filed its separate complaint against PEO on December 14, 2012. Attorneys' fees and costs incurred by PEO in connection with the CMWS suit are not covered by the fees award. First, PEO suggests that all or almost all of the services billed after December 14, 2012 relate to the original OMC suit, rather than to the CMWS suit, because PEO did not dispute the Working Charter Fees sought by CMWS in the CMWS suit.[23] Second, PEO asserts that it is difficult to segregate the legal services performed during this time period.[24] Therefore, PEO made an across-the-board percentage reduction of 4.1 percent to all of its fees billed after December 14, 2012.[25] After applying the percentage reduction to its fees billed after December 14, 2012, PEO arrived at a figure for the post-December 14, 2012 period of **$143,287.55.**

---

[21] R. Doc. 262-1 at 5.

[22] *Id.*

[23] *Id.* at 6-7.

[24] *Id.* at 7.

[25] *Id.* at 5-6.

*3. Costs*

PEO also sought **$7,635.56** in costs.[26] PEO reduced its initial amount by 13 percent to reflect that its invoices segregated costs not by claim, but by task.[27]

**C.  Magistrate Judge Knowles' Recommendation**

After reviewing PEO's Motion for Fees and the memoranda filed in support and in opposition, the Magistrate Judge issued his R&R on May 27, 2014.[28]

*1. Reasonable Hours*

The Magistrate Judge reviewed the invoices that PEO tendered for *in camera* review "line-by-line."[29] He found that PEO exercised billing judgment in eliminating duplicative or redundant work and in striking any time entry that did not fall within the Court's order.[30] He accepted the 4.1 percent reduction proffered by PEO for all hours billed after December 14, 2012.

*2. Reasonable Rates*

The Magistrate Judge compared the rates requested by PEO's attorneys with prevailing local rates and recommended adjusting

---

[26] *Id.* at 9.

[27] *Id.*

[28] R. Doc. 276.

[29] *Id.* at 7.

[30] *Id.*

6

PEO's rates downward.[31] He examined the rates of the three attorneys who did the vast majority of the work on the case and suggested reducing Paul Goodwine's rate by 18.75 percent, reducing Addie Arvidson's rate by 10 percent, and leaving Holly Thompson's rate the same.[32] Rather than apply the reduction attorney-by-attorney, the Magistrate Judge averaged the two reductions (18.75 percent and 10 percent), to arrive at a midpoint of 14.38 percent.[33] He then reduced the entirety of the attorney fees figure by 14.38 percent. He also adjusted the rate for the one paralegal on the case downward. After applying these downward adjustments, he arrived at a recommended attorneys' fees award of **$220,202.57**.[34]

### 3. Costs

The Magistrate Judge recommends awarding the full amount requested for costs, **$7,635.56**.[35]

### 4. Summary

Judge Knowles recommends awarding a total of **$227,833.13**, to be offset by PEO's liability to CMWS. After the offset, the final award to PEO would be **$75,350.13**.

---

[31] *Id.* at 4.

[32] *Id.* at 5.

[33] *Id.* at 6.

[34] *Id.*

[35] *Id.* at 9.

**D. CMWS's Objections**

CMWS objects to the R&R.[36] First, CMWS objects that PEO did not carry its burden of proof because it produced the full invoices only to the Magistrate Judge for *in camera* review.[37] CMWS contends that it was prejudiced by its inability to examine the invoices itself. CMWS asks the Court to either reject the R&R on this ground or to order PEO to produce its invoices and grant CMWS an opportunity to evaluate the reasonableness of the hours expended itself and brief its specific objections.[38] Second, CMWS contends that a more equitable reduction of PEO's fees post-December 14, 2012 is 23 percent, not 4.1 percent. Third, CMWS argues that *all* of PEO's fees should be reduced by 50 percent to reflect PEO's counsels' joint representation of PEO and HCR.[39]

**II. Standard of Review**

Federal Rule of Civil Procedure 54(d)(2)(D) authorizes referral of "a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter." A Magistrate Judge addressing a referred dispositive motion under Rule 72(b) must prepare a "recommended disposition," to which the

---

[36] R. Doc. 277.

[37] R. Doc. 277-1 at 2-3.

[38] *Id.* at 3-4.

[39] R. Doc. 277-1, p. 4-5.

8

parties can object. Then, the district judge "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." F.R.C.P. 72(b)(3).

Here, the Court referred the post-trial question of the amount of fees and costs to the Magistrate Judge to prepare a report and recommendation. Therefore, *de novo* review applies to the portions of the report and recommendation properly objected to. *See also Blair v. Sealift, Inc.*, 848 F. Supp. 670, 674-79 (E.D. La. 1994) (collecting cases and holding that a post-trial motion for attorneys' fees that is not a discovery sanction is a dispositive matter subject to *de novo* review). After *de novo* review, the Court "may accept, reject, or modify the recommended disposition, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Id.*

**III. Discussion**

**A. Standard**

The lodestar method is routinely used to determine attorney's fee awards. Under the lodestar method, a court begins by calculating the "'lodestar[,]' which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Jimenez v. Wood Cnty.*, 621 F.3d 372, 379 (5th Cir. 2010) (citing *Rutherford v. Harris County*, 197 F.3d 173, 192 (5th Cir. 1999)). The court should

exclude all time that is excessive, duplicative, or inadequately documented. *Id.* (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)). Once the lodestar amount is calculated, the court may adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87 (1989). "The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar award already took that factor into account. Such reconsideration is impermissible double-counting." *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). Moreover, there may be no need to do additional *Johnson* adjusting at all, as "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010). Indeed, "there is a 'strong presumption that the lodestar award is the reasonable fee.'" *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012) (quoting *Heidtman*, 171 F.3d at 1044).

A district court must provide "a reasonably specific explanation for all aspects of a fee determination." *Perdue*, 559 U.S. at 558. The party seeking attorney's fees bears the initial burden of submitting adequate documentation of the hours reasonably expended and of the attorney's qualifications and skill. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Once the

lodestar has been calculated, the party seeking a reduction of the lodestar amount bears the burden of showing that a reduction is justified. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995). Finally,

> the determination of fees "should not result in a second major litigation." The fee applicant . . . must, of course, submit appropriate documentation to meet "the burden of establishing entitlement to an award." But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011) (citations omitted).

**B. CMWS's Objections**

*1. PEO's Invoices*

CMWS first objects to the Magistrate's refusal to issue an order requiring PEO to file its invoices into the record. CMWS argues that by not filing the invoices into the record, PEO "did not carry its burden of proof."[40] The Court finds that there is no merit to this objection. It is true that a "fee applicant has the burden to submit adequate documentation of the hours reasonably expended." *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997) (citing *Kellstrom*, 50 F.3d at 324); *Hensley*, 461 U.S. at 433. PEO, however, has met this standard.

---

[40] R. Doc. 277-1 at 3.

In *Wegner*, the Fifth Circuit allowed a district court to base an attorney's fee award on Wegner's submission of "(1) a computer printout listing the number of hours expended by and hourly rates of the attorneys who worked on the case; and (2) an affidavit from lead counsel reflecting her credentials and her view that the attorneys' fees on the printout were reasonable and necessary in the prosecution of the case" without "any time sheets or descriptions of the work done." *Id.* at 822-23. Though the *Wegner* court described Wegner's documentation as "sparse" and "marginal at best," it nevertheless could not "say that it was so vague or incomplete that the district court was precluded from conducting a meaningful review of whether the hours claimed on th[e] litigation were reasonably expended." *Id.*

Here, the documents filed by PEO into the public record match the description of the documents submitted in *Wegner* almost exactly. Thus, even if PEO had submitted only those documents, the Court may still have determined that it had "sufficient information before it to determine reasonable hours." *Id.* at 823. But PEO did not submit only a computer printout listing hours and rates to the Court. PEO also submitted over 80 pages of detailed time entries to the Magistrate Judge and to the Court for *in camera* review.

In light of the pending appeal in this matter, the Court agrees with the Magistrate's decision to allow PEO to submit the

12

invoices for *in camera* review as opposed to filing them into the record. The cases CMWS cites regarding waiver of attorney-client and work-product privilege in the context of attorneys' fees applications are not entirely on point.[41] They establish the proposition that invoices that reveal only the "fact of billing" are not privileged. *See, e.g. Hunter v. Copeland*, No. 03-2584, 2004 WL 1161368, at *3 (E.D. La. May 24, 2004). They do not address the situation presented here, in which the invoices reveal significantly more "information on the services rendered." *Id.; C.J. Calamia Const. Co. v. ARDCO/Traverse Lift Co.*, No. 97-2770, 1998 WL 395130, at *3 (E.D. La. July 14, 1998) (observing that billing records are generally privileged "to the extent that they reveal the nature of services performed and/or the type of work performed by an attorney" while "records that simply reveal the amount of time spent, the amount billed, and the type of fee arrangement between attorney and client are fully subject to discovery"). The Court's review of the invoices reveals that the billing entry descriptions provide a fairly fine-grained picture of PEO's litigation strategy. Under the circumstances, *in camera* review of the full invoices was appropriate.

   *2. Adjustment to Hours After December 14, 2012*

CMWS next objects to the percentage by which PEO decreased its hours after December 14, 2012. In an attempt to equitably

---

[41] *See* cases cited at R. Doc. 277-1 at 3 n.11.

13

account for the addition of claims not covered by the fees award to the litigation at that time, PEO reduced its hours after December 14, 2012 by 4.1 percent. CMWS proposes a 23 percent reduction. The parties' proposed percentages reflect their competing valuations of the "results obtained" by PEO in the litigation.[42] Neither party attempts to explain, however, why PEO's level of success in the litigation has any relevance to determining a fair estimate of the percentage of PEO's fees attributable to the CMWS suit after December 14, 2012.

A fee applicant "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437. PEO admits that its records do not permit it to segregate fees between the two suits with any true accuracy here.[43] Nevertheless, the Court allows that this may be a case in which "[m]uch of counsel's time [was] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* at 435.

Based on the Court's review of PEO's billing records, the Court finds that PEO has fairly accounted for the time spent by its counsel on the CMWS suit. First, although PEO does not mention this in its briefing, the Court's review of PEO's billing records reveals the PEO actually *did* eliminate in their entirety

---

[42] R. Doc. 262-1 at 7; R. Doc. 277-1 at 4.

[43] R. Doc. 262-1 at 7.

a great many entries from the post-December 14, 2012 period that clearly pertained only to the CMWS suit. For example, PEO struck *every* entry from its March 28, 2013 invoice, which captured time spent in February, apparently because all of the entries related to the motions to dismiss filed in the CMWS suit. Thus, the Court finds that PEO has already accounted the lion's share of the work done by PEO's counsel in connection with the CMWS suit by striking entries related to the CMWS suit in their entirety. In addition, based on the Court's "overall sense of [the] suit," *Fox*, 131 S. Ct. at 2216, the Court finds that work performed for the CMWS suit not already taken into account by the struck entries is *de minimus*. Accordingly, the additional 4.1 percent reduction applied to the total hours billed for this period reasonably accounts for any remaining attorney time spent on the CMWS suit not already accounted for the individually struck entries.

> 3. *Adjustment to Hours to Account for Work Performed for HCR*

Finally, CMWS contends that because "much of [PEO's] counsels' work was for both PEO and HCR," all of PEO's entries should be "reduced by 50%."[44] PEO removed entries related to HCR on an entry-by-entry basis. As to work that may have benefitted both PEO and HCR, regardless of whether work done for PEO *also*

---

[44] R. Doc. 277-1 at 4.

benefitted HCR, the work would still have needed to be done for PEO. Thus, CMWS is not being billed for any fees that PEO would not have incurred but-for PEO's counsels' representation of HCR. No further reductions beyond those made to individual entries are necessary.

IV. **Conclusion**

For the foregoing reasons, the Court hereby approves the R&R and adopts it as its opinion.

New Orleans, Louisiana, this __25th__ day of __September__, 2014.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE